IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-460-FL

CAROLINA POWER & LIGHT COMPANY )
d/b/a PROGRESS ENERGY CAROLINAS, INC., )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )
                                       )
3M COMPANY, et al.,                    )
                                       )          **ORDER**
            Defendants.                )

No. 5:08-CV-463-FL

CONSOLIDATION COAL COMPANY,            )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )
                                       )
3M COMPANY, et al.,                    )
                                       )
            Defendants.                )

This matter comes before the court in these consolidated cases on Defendant Union Electric

Company d/b/a AmerenUE's ("defendant") renewed motion to dismiss for lack of personal

jurisdiction under Rule 12(b)(2) (CP&L DE# 482; Consol DE# 480). Pursuant to 28 U.S.C. §

636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge David W.

Daniel ("Judge Daniel") entered a memorandum and recommendation ("M&R") wherein he

recommends that the court deny defendant's motion to dismiss. Defendant timely objected to the

M&R, and plaintiffs responded.[1] In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and denies defendant's motion to dismiss.

## BACKGROUND

Consol and CP&L initiated these actions under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675. Consol and CP&L entered into an administrative settlement with the United States Environmental Protection Agency ("EPA") in 2005, which obligates them to perform removal actions at the Ward Transformer Superfund Site ("Ward Site"). Consol, CP&L, and cross-claimant PCS Phosphate seek recovery of and/or contribution towards these same costs from defendant under §§ 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f).

Plaintiffs allege the following facts. Since 2004, the Ward Site, which comprises a number of acres near Mt. Herman Road and the Raleigh-Durham International Airport in Wake County, North Carolina, has been subject to a time-critical removal action, as determined by the EPA, for environmental contamination caused by polychlorinated biphenyls ("PCBs"). The Ward Site includes a former transformer repair, sales, and reconditioning facility ("the Ward Facility") on eleven (11) acres of land, as well as other adjacent parcels of land. The PCB contamination may be traced directly to the Ward Facility, where Ward Transformer Company, Inc. and its successor in business operations, Ward Transformers and Sales, Inc. (collectively "Ward"), worked on and stored

---

[1] "Plaintiffs" shall mean, collectively, Carolina Power & Light Co. d/b/a Progress Energy Carolinas, Inc. ("CP&L"); Consolidation Coal Company ("Consol"); and PCS Phosphate Company, Inc. ("PCS Phosphate").

2

transformers contaminated with PCBs. Plaintiffs allege that defendant sold and shipped at least fourteen (14) of these transformers directly to Ward.

On October 13, 2009, defendant filed its first motion to dismiss CP&L's and Consol's second amended complaints and PCS Phosphate's cross-claims for lack of personal jurisdiction, pursuant to Rule 12(b)(2). On March 24, 2010, the court denied defendant's motion without prejudice to renewal at the close of discovery or before trial. The court's June 15, 2010 case management order provided an expedited discovery and briefing schedule on defendant's personal jurisdiction issue. On November 12, 2010, defendant filed its renewed motion to dismiss for lack of personal jurisdiction. Accordingly, the court held an evidentiary hearing on April 27, 2010. At the hearing, the parties presented evidence in the form of affidavits and deposition testimony and stipulated that this evidence was admissible in lieu of live testimony. Plaintiffs also introduced Ward business records, which the parties stipulated were admissible.

## DISCUSSION

A.    Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's memorandum and recommendation to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or

3

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Where a defendant moves to dismiss for lack of personal jurisdiction and the court holds a pretrial evidentiary hearing, plaintiff bears the burden of proving the existence of jurisdiction over the defendant by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). During the evidentiary proceeding, "a trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Soto v. Meadow Mills, No. 3:09CV292-HEH, 2009 U.S. Dist. LEXIS 55227, at *5, 2009 WL 1873785 (E.D.Va. Jun. 29, 2009) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). The preponderance standard is met when the trier of fact believes that the existence of a fact is more probable than its nonexistence. In re Winship, 397 U.S. 358, 371 (1970).

B.     Evidence

Defendant is a Missouri corporation with its principal offices in St. Louis, Missouri. It is an electric utility that serves exclusively Missouri customers. Defendant is not authorized to do business in North Carolina, has no agents, employees or subsidiaries in North Carolina, has never operated in North Carolina, and has never owned property or maintained bank accounts in North Carolina. All known facts regarding defendant's alleged transactions with Ward come from Ward's business records and from affidavits and deposition testimony of two former Ward employees, Robert E. Ward, III ("Robert Ward") and Joe Richard Brewer ("Brewer"). Defendant has no record of having sold, shipped or arranged for shipment of any used transformers to any person in North Carolina, generally, or to Ward specifically.

4

The relevant Ward records consist of ledger pages from June 1966 and July 1972, and of an inventory card numbered 6858. Ward kept a monthly ledger and inventory cards to catalogue each piece of equipment received at its facility. The ledger pages contain a line entry for each item that Ward received into inventory with the following information: the date received, from whom the item was received, a short description and serial number of the item received, an inventory card number, and a dollar amount indicating Ward's investment in the item. The inventory card reflects a card number, No. 6858, corresponding to an item on the July 1972 ledger page. The card's fields indicate, among other things, from whom the item was received, from what town and state the item came, original cost, shop cost, freight charges, type of equipment, and various technical specifications.

Brewer was deposed on September 29, 2010, and again on November 4, 2010. Brewer began working part-time at Ward in 1965, first in the oil fuel department and then in the drafting and engineering department. In 1968, Brewer transitioned to full time work and assumed additional duties, such as purchasing raw materials for the shop and later working in sales. Brewer began purchasing transformers for Ward in the mid to late 1970s, and he continued to work for Ward until January 2007.

Brewer explained that Ward mostly acquired its transformers by (1) responding to bid solicitations from power companies or agencies, and (2) responding to direct calls from brokers. Brewer described the intake process for transformers purchased by Ward, which included an inspection upon arrival to identify each transformer and basic testing to ensure each transformer was in the bargained-for condition. Additionally, within several days of a transformer's arrival at the Ward site, employees prepared an inventory card for each transformer.

5

With respect to inventory card No. 6858, Brewer explained that the information written on the card would have been recorded pursuant to Ward's normal procedure. Brewer found no indication from the inventory card that the transformer came to Ward through a broker, although he could not rule out a broker's involvement.

Brewer concluded that the information on the inventory card implied a direct sale between defendant and Ward. He testified that if the transformer had come from a location other than defendant, then that other location would have "a lot of times" been included on the inventory card. Furthermore, the card's notation that the transformer was "Received From: Union Electric" indicated that Ward purchased the transformer from defendant. Brewer could not draw any conclusion with respect to how the transformer was shipped to Ward based on the notation of a $76 incoming freight charge. Brewer also indicated that the inventory cards were not sales documents or purchase orders. The ledger pages, Brewer noted, suggested that Ward had purchased the transformers listed therein from defendant.

Brewer said that he had no personal knowledge of the alleged transactions between defendant and Ward. He could not say with certainty how the transactions were initiated, what correspondence took place, or what personnel were involved.

Robert Ward made a sworn affidavit regarding the alleged transactions between Ward and defendant. Robert Ward began working for Ward Transformer Company in the 1970s, became its president in 1980, and established and became president of Ward Transformer Sales and Service, Inc. in 1997. He stated that inventory card No. 6858 and the June 1966 and July 1972 ledger pages were made and kept by Ward in the ordinary course of business. He also stated that the ledger pages

6

indicated that defendant sold Ward one transformer in June 1966 and thirteen transformers in July 1972, and that those transformers were shipped to Ward's facility in Raleigh, North Carolina.

C.    Analysis

    1.    Personal Jurisdiction Standard

Defendant argues that there is insufficient evidence of its dealings with North Carolina to justify this court's exercise of personal jurisdiction over it. Claimants face a two-part test in establishing a court's personal jurisdiction over a nonresident defendant: (1) jurisdiction must be authorized by the state long-arm statute and (2) the exercise of jurisdiction in the particular case must be consistent with due process. Christian Science Bd. of Directors v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute extends jurisdiction to the full extent permitted by the Due Process Clause. Id. Therefore, the court needs only determine whether "the defendant has such 'minimal contacts' with the forum state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Defendant does not have the continuous and systematic contacts with North Carolina necessary to support general jurisdiction.[2] Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 276 n.3 (4th Cir. 2009). ("To establish 'general jurisdiction' over a foreign corporation, the plaintiff must show that the corporation's activities in the state are 'continuous and systematic,' which is a more demanding standard than is necessary for establishing 'specific jurisdiction.'"). Therefore, plaintiffs must show by a preponderance of the evidence that the alleged transactions

---

[2] Defendant is a Missouri electric utility that serves exclusively Missouri customers. Defendant is not authorized to do business in North Carolina, has no agents, employees or subsidiaries in North Carolina, has never operated in North Carolina, and has never owned property or maintained bank accounts in North Carolina.

between Ward and defendant are sufficient to support specific jurisdiction over defendant.

The court weighs three components in determining whether the exercise of specific personal jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the . . . claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id. at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). The first component sets forth the basic minimum contacts requirement, and the second requires that such contacts form the basis for the suit. See id. at 277 ("The minimum contacts test requires [plaintiffs] to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the . . . cause of action 'arises out of' those activities."(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985))). The third component "permits a court to consider additional factors to ensure the appropriateness of the forum" once the court has concluded that defendant has sufficient contacts with the state. Id. at 279.

        2.      The Court Has Personal Jurisdiction Over Defendant

                a.      Defendant Purposefully Availed Itself of the Privilege of Conducting Business in North Carolina.

Plaintiffs must first prove by a preponderance of the evidence that defendant purposefully availed itself of the privilege of conducting activities in North Carolina. Consulting Eng'rs, 561 F.3d at 278. At the hearing, plaintiffs submitted two pages from a ledger book. Robert E. Ward, Jr. maintained the ledger book while president of Ward and recorded the company's transformer purchases therein. The two relevant pages show that defendant sold to Ward one transformer in June 1966 and at least thirteen more in July 1972.

8

In addition to the ledger pages, plaintiffs also submitted an inventory card. Ward employees created an inventory card for each transformer delivered to the Ward Site. Plaintiffs submitted card number 6858, which indexed a transformer with serial number 1758912. The serial and card numbers correspond with one of the thirteen transformers noted on the July 1972 ledger page. Furthermore, the inventory card itself indicates that the transformer was received from defendant. Brewer testified that if the transformer had come from a source other than defendant, such distinction would have been noted above the "Received From" field. Here, no additional name was given, implying a direct sale by defendant to Ward.

Brewer's testimony regarding general business practices also suggests it was more likely than not that a utility, like defendant, when desiring to sell used equipment, would have engaged Ward directly through bid solicitation.

Defendant's evidence, consisting of additional Brewer testimony, showed only that Brewer was not personally involved in transactions between defendant and Ward and could not define them with certainty. But plaintiffs' evidence implied that defendant transacted directly with Ward, and defendant did not submit evidence of an intermediary. Accordingly, the court finds it more probable than not that defendant sold and shipped its transformers directly to Ward. Therefore, plaintiffs have proved by a preponderance of the evidence that defendant purposefully availed itself of the privilege of conducting business in North Carolina.

            b.      Plaintiffs' Claims Arise Out Of Defendant's Activities Directed at North Carolina.

Plaintiffs must next show that their claims arise out of defendant's activities directed at North Carolina. Plaintiffs allege that defendant shipped used transformers to the Ward Site and that the

9

transformers caused environmental harm. As a result, plaintiffs seek contribution for costs expended in cleaning the Ward Site. Accordingly, plaintiffs claims arise out of defendant's shipment of its transformers to North Carolina.

        c.     The Court's Exercise Of Personal Jurisdiction Over Defendant Is Constitutionally Reasonable.

Finally, plaintiffs must prove by a preponderance of the evidence that this court's exercise of personal jurisdiction over defendant would be constitutionally reasonable. Consulting Eng'rs, 561 F.3d at 278. In determining whether North Carolina is an appropriate forum, the court may consider the following factors: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id. at 279.

These factors support a finding that North Carolina is an appropriate forum for this matter. First, defendant has adequately represented itself in this forum thus far and has not alleged excessive burden. Furthermore, North Carolina has a great interest in adjudicating a dispute arising from harm done to its environment. Finally, as Judge Daniel noted, this is a complex case that has progressed significantly. The parties involved have spent substantial resources and have a strong interest in obtaining convenient and effective relief in this forum as opposed to litigating in two courts. Keeping all defendants in one court will further promote judicial efficiency. Accordingly, the court finds that the exercise of jurisdiction is constitutionally reasonable and that this court is an appropriate forum.

Based on the above analysis, the court's exercise of personal jurisdiction over defendant

satisfies North Carolina's long-arm statute and the constitutional requirements of due process.

D.    Defendant's Objections

Defendant makes five objections related to Judge Daniel's findings and four legal objections. The court considers each objection below.

1.    Defendant objects twice to Judge Daniel's finding that "Union Electric has presented no evidence to show that it did not solicit the shipments to Ward or that it was unaware that its transformers would be shipped to North Carolina."

First, defendant argues that the above statement erroneously shifts the burden of proof to defendant. The court disagrees. Throughout the M&R, Judge Daniel reiterated plaintiffs' burden to prove personal jurisdiction by a preponderance of the evidence. The excerpt above merely notes defendant's failure to rebut plaintiffs' evidence in support of personal jurisdiction.

2.    Second, defendant asserts that it *did* present evidence that it neither solicited nor knew of shipment of its transformers to North Carolina. In support, defendant cites its references to Brewer's deposition transcript.

Based on Brewer's testimony regarding the Ward records, the court finds it more probable than not that defendant transacted directly with Ward. While Brewer could not conclusively establish a direct transaction between defendant and Ward, defendant presented no evidence of an intermediary. Plaintiffs' evidence, though falling short of certainty, meets the requisite "preponderance" standard.

3.    Defendant objects to Judge Daniel's use of Brewer's deposition testimony. Specifically, defendant contends that Judge Daniel improperly inferred that defendant likely solicited the transactions with Ward based on Brewer's testimony regarding Ward's general business

11

practices. Defendant further argues that Brewer's testimony regarding Ward's Union Electric records negates the inference of a direct transaction between Ward and defendant.

Judge Daniel's use of Brewer's testimony was proper. The parties stipulated to the admissibility of Brewer's September 29, 2010, and November 4, 2010, deposition transcripts, and Judge Daniel properly interpreted Brewer's testimony. When asked how Ward generally located transformer sellers, Brewer replied, "For the most part, people would call us or send us a bid – you know, bid solicitations. Most of the power companies and those agencies did that through bid solicitations." Pls.' Mem., Ex. C at 13 (Brewer Dep. at 427:19-25). Brewer's testimony, in combination with plaintiffs' additional evidence, establishes by a preponderance of the evidence that defendant transacted directly with Ward.

Defendant attempts to rebut this inference with other testimony in which Brewer acknowledges that he cannot affirm with certainty a direct transaction. Such testimony may prevent plaintiffs from meeting a high standard. Here, however, plaintiffs' need prove personal jurisdiction by only a preponderance of the evidence. Plaintiffs have satisfied this burden.

4.      Defendant next objects to Judge Daniel's finding "that the weight of the evidence supports the conclusion that Union Electric transacted directly with Ward and not through an intermediary on the sale of the transformer listed on inventory No. 6858." As discussed above, the court agrees that plaintiffs proved a direct transaction between defendant and Ward by a preponderance of the evidence.

5.      Next, defendant argues that Judge Daniel erroneously relied on Brewer's testimony about the general practices of Ward's customers as evidence of defendant's business practices. In particular, defendant objects to any attempt to characterize defendant's business practices based on

12

the following Brewer testimony: "For the most part, people would call [Ward] or send [Ward] a bid – you know, bid solicitations. Most of the power companies and those agencies did that through bid solicitations." Def.'s Objs. to M&R at 7.

The court interprets this testimony as evidence of the manner in which Ward typically acquired its used transformers. Brewer, who began working full time for Ward in 1968 and who began purchasing transformers for Ward in the late 1970s, was competent to testify to Ward's general practice of acquiring used transformers. Therefore, Judge Daniel appropriately considered this testimony in finding that defendant transacted directly with Ward.

6.   Defendant incorrectly argues that Crown Cork & Seal., Inc. v. Dockery, 886 F. Supp. 1253 (M.D.N.C. 1995) is on point and supports dismissal.

In Crown Clark, defendants in a CERCLA action moved to dismiss for lack of personal jurisdiction. Id. at 1255. Defendants, sources of hazardous materials, had arranged with an intermediary South Carolina corporation to dispose of their waste oil. The corporation subsequently disposed of the waste in North Carolina. Defendants, however, did not know that their waste would be transported to North Carolina.

Here, the court finds by a preponderance of the evidence that defendant did not use an intermediary, but rather purposefully directed  shipment of its transformers to North Carolina. Crown Clark, then, is distinguishable and does not support dismissal.

7.   Defendant maintains that Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102 (1987) and Lesnick v. Hollingsworth & Vose, 35 F.3d 939 (4th Cir. 1994), the "stream of commerce" cases, support dismissal.

In Asahi, the Court reviewed a California court's exercise of personal jurisdiction over a

13

Japanese manufacturer ("Asahi"). Asahi, 480 U.S. at 112-13. Asahi sold tube valve assemblies to a Taiwanese corporation, which in turn sold tire tubes in California. The Court found personal jurisdiction lacking because Asahi had not purposefully availed itself of the California market: "[T]he 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about *by an action of the defendant purposefully directed to the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." Asahi, 480 U.S. at 112 (emphasis in original and internal citations omitted).

Similarly, in Lesnick, the Fourth Circuit held that a Maryland court could not exercise personal jurisdiction over a Massachusetts manufacturer that sold its cigarette filters to a Kentucky company, which in turn sold cigarettes in Maryland. Lesnick, 35 F.3d at 947. The Massachusetts manufacturer had not purposefully availed itself of the forum state. Id.

Here, the court finds by a preponderance of the evidence that defendant, unlike defendants in Asahi and Lesnick, did not use an intermediary. Rather, defendant directly arranged for shipment of its transformers to Ward. Accordingly, the "stream of commerce" cases are inapposite.

8.     Defendant next objects to Judge Daniel's conclusion that defendant's direct transactions with Ward fit precisely within the confines of specific jurisdiction as described by Justice Kennedy in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780 (2011).

In Nicastro, the Court said: "Where a defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State. In other words,

14

submission through contact with and activity directed at a sovereign may justify specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." Id. at 2787-89 (internal citations and quotation marks omitted). In Nicastro, the defendant did not transact directly with the forum state. But here, as discussed, defendant purposefully availed itself of the privilege of conducting activities within North Carolina. Therefore, Judge Daniel correctly held that this matter fits precisely within the confines of specific jurisdiction as discussed in Nicastro.

9.      Finally, defendant objects to Judge Daniel's following conclusion: "Based on the evidence in the record, the Court finds, by a preponderance of the evidence, that Union Electric initiated direct transactions with Ward resulting in as many as 14 transformer sales to Ward in the forum state and that this cause of action arises out of those transactions. Therefore, the Court concludes that Union Electric has the minimum contacts necessary to support personal jurisdiction and that those contacts form the basis for the suit."

Plaintiffs proved by a preponderance of the evidence that defendant transacted directly with Ward to ship used transformers to the Ward Site. In other words, defendant purposefully availed itself of the benefit of conducting activities in North Carolina. Plaintiffs' CERCLA action arises out of environmental harm done to the Ward Site, allegedly caused in part by defendant's used transformers. Therefore, and for the reasons discussed above, the court agrees with Judge Daniel that defendant has the minimum contacts with this forum necessary to support the court's exercise of personal jurisdiction over it.

## CONCLUSION

Plaintiffs have shown by a preponderance of the evidence that the court has personal jurisdiction over defendant. Accordingly, the court ADOPTS Magistrate Judge Daniel's

15

Memorandum and Recommendation and DENIES defendant's motion to dismiss (CP&L DE# 482;

Consol DE# 480).

    SO ORDERED, this the 29 day of September, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge