THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| CAROLINA POWER & LIGHT COMPANY )<br>d/b/a PROGRESS ENERGY CAROLINAS, )<br>INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>3M COMPANY, et al., )<br>)<br>Defendants. ) | | Civil Action No.: 5:08-CV-460-FL<br>(CONSOLIDATED) |
| CONSOLIDATION COAL COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>3M COMPANY, et al., )<br>)<br>Defendants. ) | | Civil Action No.: 5:08-CV-463-FL<br>(CONSOLIDATED) |

## ORDER

This matter is before the Court on Defendant Florida Power & Light Company's ("FP&L") motion to compel Plaintiffs'[1] production of certain unredacted documents [CP&L DE-559; Consol DE-556]. Plaintiffs have responded [CP&L DE-567; Consol DE-563],[2] and the motion is ripe for decision.

FP&L sought production of "all correspondence or communications between Plaintiffs and former Ward Employee." Def.'s Mem., Ex. L at 3 ¶ 1 [DE-560-12]. Plaintiffs responded

---

[1] "Plaintiffs" shall mean, collectively, Carolina Power & Light Co. d/b/a Progress Energy Carolinas, Inc. ("CP&L"); Consolidation Coal Company ("Consol"); and PCS Phosphate Company, Inc. ("PCS").
[2] Hereafter, the Court will cite only to the docket number in the CP&L case, 5:08-CV-460-FL.

that they would produce (1) non-privileged responsive documents and (2) privileged documents with the communications authored by respective counsel for each Plaintiff redacted (subject to FP&L's agreement that Plaintiffs did not waive the asserted privilege by producing the redacted documents). *Id.*, Ex. N. at 3-4 ¶ 1 [DE-560-14]. Plaintiffs produced the redacted documents, but FP&L found them insufficient for a variety of reasons, more fully discussed below, and filed the instant motion to compel.

Having reviewed, *in camera*, the documents in question, the Court concludes that the redacted portions of the documents are opinion work-product and, therefore, are not discoverable.

## **DISCUSSION**

FP&L contends that any asserted privilege with respect to the requested documents has been waived by Plaintiffs' offensive use of the information contained in those documents. Specifically, FP&L argues that "Plaintiffs waived any work product privilege for non-opinion information disclosed to and discussed with Mr. Ward III, Mr. Brewer and other Ward Co. witnesses when they chose to use the results of those communications to create testimonial exhibits and refresh witnesses' recollections; both of which they point to as the key for interpreting each Defendants' so-called 'nexus' documents." Def.'s Mem. at 9 [DE-560]. FP&L also contends that some of the emails are incomprehensible as redacted and that it needs the unredacted emails to discern to what extent, if any, the Ward employees' deposition testimony was influenced by Plaintiffs' counsel or contradicted positions taken by Plaintiffs' counsel in these cases. *Id.* at 10-11. Finally, FP&L objected to Plaintiffs' assertion of a common interest or joint prosecution privilege regarding certain communications between Plaintiffs' counsel and Robert E. Ward III ("Ward III"). *Id.* at 15.

2

Plaintiffs respond that the redacted portions of the emails contain attorney opinion work-product and are, therefore, not discoverable. Pls.' Mem. at 5-7 [DE-567]. Plaintiffs also contend that FP&L's misreading of emails and/or failure to fully consider the entire email string or related attachments has resulted in the lack of understanding or perceived contradictions in witness testimony. *Id.* at 7-8. With regard to the communications with Ward III, Plaintiffs contend that both the common interest and work-product doctrines prohibit their disclosure. *Id.* at 8-10. Finally, Plaintiffs contend that FP&L's motion is untimely. *Id.* at 10.

The work-product privilege generally protects "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case," *United States v. Nobles*, 422 U.S. 225, 238 (1975), and has been incorporated into the Federal Rules of Civil Procedure:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A) & (B). "There are exceptions to the rule, but simply stated, an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing." *In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981). There appears to be no dispute that the documents in question are work-product, that is, prepared in anticipation

3

of litigation or for trial by counsel for a party. FP&L's argument, rather, is one of subject matter waiver.

The work-product privilege is not absolute and may be waived. *Nobles*, 422 U.S. at 239.

> What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances. Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver. But where . . . counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents.

*Id.* at 240 n.14. The Fourth Circuit has taken a limited approach to waiver by bifurcating work-product into opinion and non-opinion, *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222-23 (4th Cir. 1976), and limiting subject matter waiver to non-opinion work-product. *See In re Martin Marietta Corp.*, 856 F.2d 619, 625-26 (4th Cir. 1988) (holding that subject matter waiver does not extend to opinion work-product). The privilege with respect to opinion work-product is nearly absolute. *See In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994) (explaining that opinion work-product "can be discovered only in very rare and extraordinary circumstances") (citation omitted). Therefore, the Court must determine whether the redacted information is in the nature of opinion or non-opinion work-product.

### 1. The redacted communications contain opinion work-product.

Opinion work-product contains the "mental impressions, opinions, and legal theories" of counsel. *Duplan Corp.*, 540 F.2d at 1223. Non-opinion or fact work-product "consists of documents prepared by an attorney that do not contain the attorney's mental impressions." *In re Grand Jury Proceedings*, 401 F.3d 247, 250 (4th Cir. 2005). While the law is easily stated, its application can prove difficult, and the Fourth Circuit has recognized that "the line between

4

opinion and non-opinion work product can be a fine one." *In re Martin Marietta Corp.*, 856 F.2d at 626.

In the present case, the communications in dispute are questions posed by Plaintiffs' attorneys in emails to potential witnesses in this case. Several courts have concluded that an attorney's communications with a potential witness may reveal the legal strategy or thought process of the attorney. *See, e.g., Gerber v. Down East Cmty. Hosp.*, 266 F.R.D. 29, 34-35 (D. Me. 2010); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570, 2008 WL 8183819, at *7 (S.D.N.Y. May 21, 2008); *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 519 (N.D. Ill. 1990). In the *Gerber* case, the court denied a motion to compel production of email correspondence between plaintiffs' counsel and potential witnesses based on the work-product privilege. The *Gerber* court noted that even if the defendant made a showing of substantial need and undue hardship, the court would permit plaintiffs' counsel to redact his side of the email correspondence before making the production, presumably because the court considered the attorney's questions to be opinion work-product. *Gerber*, 266 F.R.D. at 34, n.3. In the *Barrett* case, the plaintiff hired, as a consultant for the case, one of its former employees, who became a key fact witness. The *Barrett* defendant sought, during a deposition of the witness, to discover the substance of prior conversations between the witness and plaintiff's counsel. The *Barrett* court determined that any facts plaintiff's attorneys communicated to the witness must be disclosed, but that "the specific questions that [plaintiff's] counsel has asked him, or even the area of the case to which counsel directed the majority of the questions" were not discoverable "as tending to disclose the mental impressions, conclusions, opinions, or legal theories of [plaintiff's] attorneys." *Barrett Indus. Trucks, Inc.*, 129 F.R.D. at 519 (citation omitted).

5

The Court has reviewed, *in camera*, each of the redacted communications at issue here and finds them to be in the nature of opinion work-product, because their disclosure would tend to reveal the thought processes and legal strategies of Plaintiffs' counsel in these matters. Therefore, subject matter waiver is not applicable, and the communications remain protected by the work-product privilege.

### 2. No grounds exist to pierce the privilege.

Having determined that the redacted communications are protected by the work-product privilege and that no subject matter waiver has occurred with respect to the attorney's portion of the communication, the Court must now determine whether there are other grounds to pierce that privilege. As stated above, the privilege with respect to opinion work-product is nearly absolute and is only discoverable in "very rare and extraordinary circumstances." *In re Grand Jury Proceedings*, 33 F.3d at 348.

FP&L contends that some of the emails are incomprehensible as redacted and that it needs the unredacted emails to discern to what extent, if any, the Ward employees' deposition testimony was influenced by Plaintiffs' counsel or was contradicted by prior statements contained in the emails. It appears to the Court that, for the most part, the emails as redacted sufficiently convey their factual content and subject matter when considered along with the related emails in the string or the related documents, all of which have been disclosed to FP&L.

For example, FP&L contends that Consol 000725, Consol 000968-69, and Consol 002135 are "nonsensical" due to the redactions. Def.'s Mem., Ex. W [DE-560-23]. Consol 000725 contains counsel's question to Joe Richard Brewer ("Brewer") with all but a serial number redacted. Also produced along with that email was Consol 000726-27, the documents to which the question is related. The Court agrees with FP&L that little can be discerned from this

6

communication. However, Plaintiffs also produced Consol 001988-90, which contains both the redacted version of counsel's question found in Consol 000725 and Brewer's answer, which clarifies the communication. Likewise, Consol 000968-69 contain counsel's question to Brewer with all but the serial numbers and Ward Bates Numbers redacted. However, Consol 002011-2013 contains both the redacted version of counsel's question found in Consol 000968-69 and Brewer's answer, and the related documents were also produced at Consol 000970-000980. Considering the entire email chain and related documents together clarifies the communication. The same may be said for Consol 002135, when considered together with Consol 000603 and Consol 00020136-37. While it may take some work on the part of FP&L, it appears that the information and documents necessary to gain a reasonable understanding of the communications have been disclosed. Furthermore, the Court is confident that Plaintiffs' counsel would provide clarification regarding the linking of questions, answers, and Ward documents to FP&L's or other Defendants' counsel to assist them in understanding the document production.

The Court does note that there are a few instances where the redactions appear to be inconsistent. For example, an email with the subject line of "Voltage questions," dated February 10, 2009, appears at Consol 001275-001278 and Consol 002062-002066. In the former, Brewer's answer is redacted and only serial numbers are disclosed, but in the latter Brewer's answer is disclosed. As discussed above, the witnesses' portion of the communication should be disclosed to the extent it does not reveal counsel's question. However, there appears to be no prejudice to FP&L, because the information was ultimately disclosed in another document. Nevertheless, to ensure that FP&L receives all the information to which it is entitled, Plaintiffs shall review the produced redacted emails to ensure that only the questions of counsel have been redacted and that all purely factual information has been disclosed.

FP&L also contends that it needs the unredacted emails to discern to what extent, if any, the Ward employees' deposition testimony was influenced by Plaintiffs' counsel or contradicted positions taken by Plaintiffs' counsel in these cases. For example, FP&L compares a communication between Plaintiffs' counsel and Brewer regarding whether or not it was discernable from certain Ward records that a transformer contained oil, with Plaintiffs' definition of "No oil" or "empty" in Plaintiffs' deposition exhibit 36. Def.'s Mem., Ex. P [DE-560-16] & Pls.' Ex. 36 [DE-560-28]. FP&L asserts that Brewer's response contradicts Plaintiffs' definition and that Brewer admitted under cross-examination that the last sentence in Plaintiffs' definition was not his definition. FP&L argues that this illustrates why it needs the unredacted emails, i.e. to uncover manipulations of testimony by Plaintiffs' counsel. Yet, FP&L appears to have understood the substance of the communications with Plaintiffs' counsel and Brewer, compared it to Plaintiffs' exhibit, and questioned Brewer regarding the asserted inconsistency at his deposition, all without the benefit of Plaintiffs' counsel's question posed to Brewer. FP&L has made no assertion that Brewer, Ward III, or any other witness has been uncooperative in any way, such as refusing to answer questions regarding the Ward operations. Furthermore, Plaintiffs have provided FP&L with the witnesses' side of the communication, to the extent it does not include the question asked by Plaintiffs' counsel, which is sufficient to disclose the factual content of the communication. Therefore, it appears to the Court that FP&L's concerns are sufficiently addressed by disclosure of the redacted emails and that FP&L's has not shown the type of extraordinary circumstance that would override the opinion work-product privilege.

3. **Application of the common interest doctrine is not necessary.**

Finally, FP&L objects to Plaintiffs' assertion of the common interest doctrine with respect to certain communications between Plaintiffs' counsel and Ward III. The common

8

interest doctrine, or joint defense privilege, "is an exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 242 (E.D.N.C. 2010). "The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010). "To be protected under the common interest privilege, 'shared or jointly created information,' or communication between the parties, 'must first satisfy the traditional requisites for the attorney-client or work product privilege.'" *Mainstreet Collection, Inc.*, 270 F.R.D. at 243 (quoting *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D. D.C. 2005)). "Additionally, the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." *Id.* (quoting *Glynn v. EDO Corp.*, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010)).

FP&L contends that Ward III is a fact witness and non-party to this litigation and is not represented by common counsel with Plaintiffs. Therefore, FP&L posits that such communications are only protected by the common interest doctrine if "the parties established that they have a written joint prosecution agreement, that they share an identical legal interest, that the communication was in furtherance of a joint legal effort, **and** that the privilege had not been waived, for example, by disclosure to third parties like Mr. Brewer." Def.'s Mem. at 15 (citing *Mainstreet Collection, Inc.*, 270 F.R.D. at 243) (original emphasis). FP&L argues that the claim of common interest does not address "Plainitffs' waiver of non-opinion work product with regard to the testimonial exhibits." *Id.*

9

Plaintiffs counter that these documents are protected by one or both of the traditional privileges and not by the common interest doctrine alone. Further, Plaintiffs argue that they and the Ward entities are jointly and severally liable, as signatories to the 2005 AOC, for the performance of all requirements of the AOC and that they have a common interest in the successful and joint completion of those ongoing requirements. The terms of the Participation Agreement are confidential and have not been disclosed to Defendants. However, Plaintiffs have broadly stated that Plaintiffs and Ward III entered into the Participation Agreement to effectuate the provisions of the AOC and to avoid litigation with the EPA and each other and that "[t]he Participation Agreement requires Ward III's cooperation in the Plaintiffs' pursuit of claims against other PRPs." Pls.' Mem. at 9 [DE-567]. Plaintiffs also stated that the Participation Agreement resolves Plaintiffs' claims against Ward III and Ward III's claims against the Plaintiffs, but that Ward III remains subject to possible third-party claims by the Defendants in these actions. *Id.*

Having reviewed, *in camera*, the disputed communications between Plaintiffs' counsel and Ward III, as well as the Participation Agreement and First Amended Participation Agreement, the Court finds that the communications either (1) contain opinion work-product that is not discoverable for the reasons already discussed, or (2) contain communications related to the drafting of or terms of the Participation Agreement that are not relevant, under Rule 26(b)(1), to the claims or defenses in Phase I of this case. Having so concluded, the Court need not reach at this time the issue of whether the common interest doctrine applies to Plaintiffs' counsels' communications with Ward III. Likewise, the Court need not address Plaintiffs' contention that FP&L's motion is untimely, as the motion is denied on other grounds.

## CONCLUSION

Defendant FP&L's motion to compel Plaintiffs' production of certain unredacted documents [CP&L DE- 559; Consol DE-556] is **DENIED**.

This the 16th day of November, 2011.

DAVID W. DANIEL
United States Magistrate Judge