IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-460-FL

| | |
|---|---|
| DUKE ENERGY PROGRESS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ALCAN ALUMINUM CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | **ORDER** |
| ) | |

No. 5:08-CV-463-FL

CONSOLIDATION COAL COMPANY, )
)
Plaintiff, )
)
v. )
)
ALCAN ALUMINUM CORPORATION, et al., )
)
Defendants. )

This matter comes before the court on third-party defendant Truland Corporation's ("Truland") motion to compel (DE 1349), to which third-party plaintiff PCS Phosphate Company, Inc. ("PCS Phosphate") has responded.[1] This matter is now ripe for review. For the following reasons, Truland's motion is denied.

## BACKGROUND

Reference is made to prior orders for a more complete recitation of the history and

---

[1] For the convenience of the court docket entry numbers refer to the document's location under case number 5:08-cv-460. The instant motions are also lodged under the parallel case number 5:08-cv-463.

background of this case. The court summarizes here case background of particular importance to the discovery issues now before the court.

On August 15, 2013, the court conducted a conference regarding the scheduling of discovery, which discovery had been stayed at that time. The court's August 19, 2013, order (hereinafter the "Scheduling Order") followed, which partially lifted the stay of discovery. In the Scheduling Order, the court expressly turned the third-parties' attention to the court's earlier orders. In the June 14, 2010, order, where reference is made to "Initial Informal Discovery," and about seven months later, where "[s]ubstantial disagreements were raised and decided in the court's January 13, 2011, order," concerning this discovery, the court focused on the importance of reviewing the orders dated June 14, 2010, and January 13, 2011, "so that third-party defendants also will understand the original parties' past initial discovery disputes, and how they were resolved by the court to avoid unnecessary future delays in parallel discovery now involving them."

At issue here is the Initial Informal Discovery, which is "meant to provide for an efficient exchange of broadly relevant information, not to satisfy each party's need for every document or piece of information necessary to its case." On October 17, 2013, the court entered an order addressing a few discovery issues, which included an invitation for the parties to review its prior orders, and then file any necessary motion as to PCS Phosphate's responses to Initial Informal Discovery, including interrogatories and document requests.

Truland raises issue with request for production no. 12 and interrogatory no. 12. The request for production seeks settlement communications and communications related to "operable units" of the Ward site, between PCS Phosphate and third-party defendants. PCS Phosphate responded by recognizing that such information exists, but did not provide settlement communications or

2

communications pertaining to the other operable units. The contention interrogatory seeks information related to the leaks or spills of PCB oil from defendants' transformers onto the Ward site. PCS Phosphate responded by generally referring to evidence in the record.

## COURT'S DISCUSSION

Rule 26(b) of the Federal Rules of Civil Procedure provides for a broad scope of discovery "regarding any non privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Discovery is subject to limitation if it is unreasonably cumulative, duplicative, burdensome or expensive. Fed. R. Civ. P. 26(b)(2)(C). Additionally, the court reminds that the discovery at issue here is only the Initial Informal Discovery, which is limited in scope according to the Scheduling Order.

The court turns first to the request for production. The "operable units" are in reference to other phases of clean-up that are ongoing at the Ward site. These operable units are not at issue in this litigation, and Truland provides no argument as to why they are relevant. The court encourages the parties to discuss this topic as they plan for further discovery, but during the Initial Informal Discovery at issue here, the court will not compel production of third-party communications regarding the other operable units at the Ward site.

As to settlement communications with other third-party defendants, the relevance to Truland of other parties' settlement communications has not been demonstrated for Phase I discovery as to liability. Furthermore, PCS Phosphate points out that it is actively engaged in many settlement negotiations, raising issue with the level of burden in producing all such communications. The court is hesitant at this juncture to dampen settlement discussions, and from its review of the cases cited

3

by Truland,[2] sees only that information as to settlement amounts may, under some circumstances, be relevant as to damages. See Truland's Br. 2-3 (citing Thermal Design, Inc. v. Guardian Bldg. Products, Inc., 270 F.R.D. 437, 439 (E.D. Wis. 2010) (asking the parties to further confer as to what information in settlement discussions are within the scope of their protective order); West v. Jewelry Innovations, Inc., 2009 WL 668695, at *1 (N.D. Cal. March 13, 2009) (finding financial information as to settlement relevant to liability); Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., 254 F.R.D. 568, 584-85 (N.D. Cal. 2008) (discussing the relevance of settlement negotiations to liability); In re Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp. 2d 201, 212 (D.D.C. 2005)). Where Phase I discovery is limited to liability and there is some significant burden associated with producing such communications, settlement communications with other third-party defendants are beyond the scope of Initial Informal Discovery.

As to the interrogatory, the court has closely reviewed its January 13, 2011, order, which dealt with similar issues between the parties. In that order, the court recognized that plaintiffs could rely heavily on the nexus files and provide general responses to defendants' interrogatories because "the CMO provides for additional discovery beyond the initial discovery phase." In review of PCS Phosphate's response to interrogatory no. 12, it referenced the nexus files as well as specific depositions which discussed leaks and spills of oil from transformers at the Ward site. PCS Phosphate explained how transformers contaminated the Ward site with PCBs in general. This information is sufficient to satisfy the court that PCS Phosphate has complied with the court's previous orders governing Initial Informal Discovery.

---

[2] It is striking that Truland's brief does not contain reference to a single case from the Fourth Circuit.

4

## CONCLUSION

For the foregoing reasons, Truland's motion to compel is DENIED (DE 1349).

SO ORDERED, this the 6th day of November, 2013.

LOUISE W. FLANAGAN
United States District Judge

5