IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| DUKE ENERGY PROGRESS, INC. d/b/a ) | | |
| PROGRESS ENERGY CAROLINAS, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 5:08-CV-460-FL | |
| ) | | |
| 3M COMPANY et al., ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

| | | |
|---|---|---|
| CONSOLIDATION COAL COMPANY, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 5:08-CV-463-FL | |
| ) | | |
| 3M COMPANY et al., ) | | |
| ) | | |
| Defendants. ) | | |

**ORDER**

These consolidated cases[1] come before the court on three motions to compel by various third-party defendants: (1) one (No. 460 D.E. 1523; No. 463 D.E. 1514) by Truland Corporation ("Truland") and Georgia-Pacific Company ("Georgia-Pacific") ("Truland Motion"); (2) another (No. 460 D.E. 1526; No. 463 D.E. 1517) by Tallahassee Memorial HealthCare, Inc. ("Tallahassee"), Riley Power, Inc. ("Riley"), and Bay Mechanical & Electrical Corporation ("Bay") ("Tallahassee Motion"); and (3) the third (No. 460 D.E. 1528; No. 463 D.E. 1519) by

---

[1] Case number 5:08-CV-460-FL is the lead case number for three consolidated actions brought by plaintiff Duke Energy Progress, Inc. ("DEP") (*see* 18 Aug. 2009 Minute Entry (D.E. 91) (consolidating cases)) and is referred to herein as "No. 460." Case number 5:08-CV-463-FL is the lead case number for three consolidated actions brought by plaintiff Consolidation Coal Company ("Consolidation") (*see id.*) and is referred to herein as "No. 463."

J.C. Blair Memorial Hospital ("Blair") and National Railroad Passenger Corporation ("National") ("Blair Motion") (collectively "movants").[2] The motions seek an order compelling the further deposition of the Fed. R. Civ. P. 30(b)(6) corporate designee of third-party plaintiff PCS Phosphate Company, Inc. ("PCS"), Michael Brom ("Mr. Brom" or, in context, "the deponent").[3] The motions have been fully briefed and referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (*See* Public Docket Entries dated 16 Oct. 2014 (in both 460 and 463)). For the reasons set forth below, the motions will be granted in part and denied in part.

## BACKGROUND

### I. EVENTS LEADING UP TO THE DEPOSITION

On 20 June 2014, movants served on PCS their fourth amended notice (D.E. 1525-4) to take the deposition of a Rule 30(b)(6) corporate designee on 1 July 2014. On 23 June 2014, PCS served its response and objections (D.E. 1534-7) to the notice. One of the objections was to Topic 22, which related to "[t]he formation of the Trust Agreement[4] including events leading up to the Trust Agreement; the terms of the Trust Agreement and the respective roles of PCS, the plaintiffs and other parties in the Trust Agreement." (4th Am. Dep. Not. ¶ 22). PCS objected to

---

[2] Because the parties' respective filings related to the motions to compel are identical in both the No. 460 and No. 463 cases, the court will hereinafter cite to only the docket numbers in the No. 460 case.

[3] Responses to the motions to compel were filed by PCS (D.E. 1534, 1535), DEP (D.E. 1536), and Consolidation (D.E. 1533).

[4] The "Trust Agreement" at issue is an agreement between DEP, Consolidation, PCS, Bassett Furniture Industries, Inc. ("Bassett"), and Schneider Downs & Company, as trustee, which:

> addresses the administrative, financial, accounting and recordkeeping functions needed for [Consolidation], DEP, Bassett and PCS' performance of the PCB removal action at the Ward Transformer Site as required by the September 2005 EPA Administrative Order on Consent ("AOC"). The AOC was executed by [Consolidation], DEP, Bassett, and certain Ward-related entities.

(Consolidation Resp. 2). Page citations to the foregoing and all other documents in the record are to page numbers assigned by the court's CM/ECF electronic filing system.

this topic on the grounds that it was protected by privilege, including the attorney-client privilege, work product doctrine, and joint defense or common interest privilege, and that it was not relevant to Phase 1[5] of this case. (Resp. to 4th Am. Dep. Not. (D.E. 1534-7) 10-9 ¶ 22). PCS also stated that it would not present a witness on this topic. (*Id*.). In the accompanying cover letter, counsel for PCS further stated: "Please note that PCS will not be presenting a witness on topics 10[6] and 22 for the reasons explained in the enclosed objections. If you think this is something we need to discuss further or discuss with the Special Master, please let me know." (*Id*. at 2). The movants did not contact PCS in response to its objections, and its objection to Topic 22 was addressed by the parties for the first time during a 27 June 2014 conference call with the Special Master appointed in this case, David O. Ledbetter. (PCS Resp. to Truland Mot. (D.E. 1534) 2).

On 30 June 2014, the day prior to the deposition, counsel for PCS contacted Mr. Ledbetter by email (D.E. 1534-8 at 3) "to check to see if there would be a resolution regarding the objections we discussed on Friday [27 June 2014 ] in advance of the deposition tomorrow." (*Id*.). On the same date, Mr. Ledbetter responded to the email, including all parties in the distribution list, stating, in relevant part:

> When I asked counsel whether it might be helpful for me to review, in camera and in advance of the deposition, the documents that are the subjects of topics 10 and

---

[5] In its 2 April 2010 preliminary case management order (D.E. 282), the court bifurcated the proceedings into two phases as follows:

1. Further proceedings in these matters shall be bifurcated into separate liability and allocation phases, denominated "Phase I" and "Phase II."

    a. In Phase I, the court will engage in an inquiry into the "owner" and "arranger" theories of liability put forward by the plaintiffs.
    b. In Phase II, the court will use equitable factors, as appropriate, to allocate damages among the defendants previously found to be liable.

(*Id*. ¶ 1) (internal citations and footnote omitted).

[6] Topic 10 is not at issue in the instant motions.

3
Case 5:08-cv-00463-FL   Document 1536   Filed 12/16/14   Page 3 of 15

> 22 in the Fourth Amended Notice of Deposition, Mr. Redmond [counsel for Truland] indicated that he did not think that would be necessary. He indicated that his intention is to proceed through with the deposition.

(D.E. 1534-8 at 2-3). Mr. Ledbetter further informed the parties that he would be available by telephone during the deposition to resolve disputes. (*Id.* at 3). He again emphasized that "[i]f [he were] called upon to assist [during the deposition on the following day], [his] ability to do so effectively may depend on having an opportunity to quickly review, in camera, the documents in question." (*Id.*).

## II. THE DEPOSITION

During the deposition on 1 July 2014, PCS counsel initiated a call to Mr. Ledbetter regarding disputes over the propriety of PCS counsel's instructions to Mr. Brom not to answer certain questions on the grounds that they were beyond the scope of the deposition topics specified in the notice. (Transcript of 1 July 2014 call with Ledbetter ("Ledbetter Tr.") (D.E. 1534-9) 8:1 to 10:21). The dispute did not involve topics 10 and 22, and, in fact, counsel for Truland explained to Mr. Ledbetter that "we haven't even reached 10 or 22 yet." (*Id.* 12:18-19). Counsel for Truland objected to further delaying the deposition by proceeding with the call "because the situation is so bad now it can only be resolved through briefing" (*id.* 10:17-18) and "any resolution on the fly by telephone . . . [would not] be a fair resolution without the transcript" (*id.* 10:20-21).

In his 2 October 2014 status report to the court (4th Stat. Rpt. (D.E. 1530)), Mr. Ledbetter summarized the 1 July 21014 conference call and his recommendation to the parties as follows:

> [O]n July 1, 2014, I was contacted by e-mail and then by telephone during the Rule 30(b)(6) deposition of [PCS], by interested Third-Party Defendants. Counsel had reached an impasse, occasioned by an instruction not to answer a line of questions that the deponent's counsel contended were not set forth in the notice of deposition and for which the deponent was unprepared. The line of questions did not involve alleged privileged or confidential matters. I advised counsel that

the time spent on the phone with me should not be counted toward the applicable questioning time limit, received statements concerning the circumstances and the positions of counsel, and suggested that the deponent's counsel note and reserve objections and permit the deponent to answer the disputed questions to the extent he could.

(*Id*. at 2; *see also* Ledbetter Tr. 8:1 to 9:24; 11:25 to 12:5; 21:9 to 24:4; 25:16 to 26:1). Based on Mr. Ledbetter's recommendation, PCS counsel did not instruct Mr. Brom not to answer for the remainder of the deposition unless the question sought information that PCS counsel viewed as privileged. (*See* 1 July 2014 Deposition Transcript ("Dep. Tr."), *e.g.*, 357:3-10; 396:21-397:20; 399:9-23; 399:24 to 400:3; 400:5-15; 400:23-401:1; 401:3-12; 401:14-19; 401:25 to 402:4; 402:6-10; 402:12-18; 402:21-25; 403:2-6).

### III. EVENTS FOLLOWING THE DEPOSITION

On 31 July 2014, counsel for Truland submitted a letter to Mr. Ledbetter in which he asserted that PCS's counsel had intentionally obstructed the deposition by, *inter alia*, instructing the deponent not to answer questions. (4th Stat. Rpt. 2). Both PCS and other various defendants and third-party defendants submitted written responses on this matter to Mr. Ledbetter. (*Id*.). Regarding instructions not to answer questions on Topic 22, PCS maintained its position that the Trust Agreement is privileged. (*Id*.). After reviewing the parties' written submissions as well as the transcript of the deposition, Mr. Ledbetter conducted a conference call on 19 August 2014 to address these issues. (*Id*.). During the call, Mr. Ledbetter made the following suggestions: (1) "the transcript did not appear to evidence intentional obstruction" by PCS counsel; (2) PCS counsel's "instructions not to answer questions concerning topics other than Topic 22 were inconsistent with the requirements of the Federal Rules of Civil Procedure"; and (3) the parties should "consider stipulating to one additional hour of Rule 30(b)(6) deposition, to be held by videoconference at the expense of [PCS]." (*Id*. at 2-3).

Regarding specifically PCS counsel's instructions not to answer questions about Topic 22, Mr. Ledbetter reiterated that he "could not be of further assistance to the parties in resolving their differences regarding whether the Trust Agreement is subject to disclosure and compulsory testimony without knowing its contents." (*Id.* at 3). He also stated that his *in camera* review of the Trust Agreement for this purpose "would require an entirely voluntary stipulation of the parties" because the parties "might be reluctant to have me review the Trust Agreement and later assist the parties in settlement discussions." (*Id.*). No agreement was reached by the parties during the call concerning Mr. Ledbetter's suggestions. (*Id.*).

On 3 September 2014, counsel for Riley, on behalf of the "interested"[7] third-party defendants, sent Mr. Ledbetter an email informing him that they intended to pursue resolution of the issue relating to Topic 22 by filing a motion with the court. (*Id.*). Specifically, counsel stated that they "agreed with [Mr. Ledbetter's] appraisal" that "reviewing the Trust Agreement may impair or otherwise have an impact on [his] ability to later mediate settlement discussions." (3 Sept. 2014 email (D.E. 1534-10) 4). On 4 September 2014, PCS counsel responded to this email expressing the position that because Mr. Ledbetter had not been given the opportunity to address the substance of the Topic 22 issue–whether the Trust Agreement was privileged–pursuit of the matter through formal motions practice was not permitted. (4 Sept. 2014 email (D.E. 1534-10) 2). Counsel cited Judge Flanagan's 10 June 2014 order (D.E. 1444) dismissing another defendant's motion for a protective order on the grounds that the 8 January 2014 order (D.E. 1387) appointing Mr. Ledbetter as Special Master requires disputes to be brought to him before raising the issue in a formal motion. (4 Sept. 2014 email 2 (citing 10 June 2014 Order 2 ("In accordance with its January 8, 2014, order, the court requires the parties to bring any

---

[7] Except for Truland, it is unclear from the record to which of the third-party defendants counsel was referring.

discovery disputes to the Special Master for resolution before filing formal motion with this court.")))  PCS further asserted that there is nothing in the appointment order "suggest[ing] that there is an exception to this requirement for certain types of discovery disputes because of a future settlement conference." (*Id*. at 3).

On 9 September 2014,[8] Mr. Ledbetter conducted a follow-up conference call with the parties during which he "reaffirmed [his] willingness to undertake an *in camera* review of the Trust Agreement, if all parties freely consented to such a review," and

> restated [his] concern that each of the parties remain confident that [his] service as a mediator not be influenced to their disadvantage by familiarity with the terms of the Trust Agreement, and added that this concern was directed principally to the Plaintiffs, the parties to the Trust Agreement, though it might also involve one or more of the Defendants.

(4th Stat. Rpt. 3-4). However, the parties were unable to reach a stipulation to Mr. Ledbetter's *in camera* review of the Trust Agreement, and movants subsequently filed the instant motions to compel. (*Id*. at 4).

## DISCUSSION

### I.  APPLICABLE LEGAL STANDARDS

The Federal Rules of Civil Procedure enable parties to obtain information by serving requests for discovery on each other. *See generally* Fed. R. Civ. P. 26-37, 45. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

---

[8] Although Mr. Ledbetter references 3 September 2014, this appears to be a typographical error.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000). While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). These general principles apply to a deposition taken pursuant to Rule 30(b)(6), which governs depositions of an organization. *Coryn Group II, LLC v. O.C. Seacrets, Inc,* 265 F.R.D. 235, 238 (D. Md. 2010) ("To the extent information sought in a Rule 30(b)(6) deposition is relevant to the claims or defenses in the case and is known or reasonably available to the corporation, it must provide a corporate designee or multiple designees prepared to provide that information.").

Rule 30(c)(2) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Thus, under Rule 30(c)(2), "a deponent may refuse to answer a question during a deposition only for one of the three listed reasons: the preservation of privilege, the enforcement of a court-directed limitation, or the presentation of a motion under Rule 30(d)[(3)] to terminate a deposition that is being conducted in bad faith or in manner that unreasonably annoys, embarrasses, or oppresses the deponent or a party." *Ferrell v. Sparkman*, No. 4:06-cv-7, 2007 WL 172516, at *2 (E.D. Tenn. 18 Jan. 2007); *see also Calderon v. Symeon*, Civ. No. 3:06CV1130 (AHN), 2007 WL 735773, at *2 (D. Conn. 2 Feb. 2007).

These provisions reflect the broad principle that gamesmanship to evade answering discovery as required is prohibited. *See Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010). Further, it is improper for counsel to instruct a deponent not to answer a question on the grounds that it is outside the scope of the 30(b)(6) notice. *See E.E.O.C. v. Freeman*, 288 F.R.D. 92, 99 (D. Md. 2012) ("The proper course [is] to object that the question was outside the scope of the 30(b)(6) notice, and state on the record that the answers would not bind the [organization the deponent represented].")

## II.  OVERVIEW OF MOVANTS' ARGUMENTS

Movants seek to reopen the deposition on the grounds that PCS counsel: (1) failed to prepare Mr. Brom on Topic 21 of the deposition notice; (2) improperly instructed the deponent not to answer questions regarding Topic 22 on the grounds of privilege; and (3) improperly obstructed the deposition with unnecessary objections and commentary, by coaching the deponent with speaking objections, and by instructing the deponent not to answer questions on the grounds that they were outside the scope of the deposition notice. Movants request that: (1) they be permitted to further depose Mr. Brom for up to eight hours; (2) PCS counsel be required to limit his objections during the deposition to only those based on privilege or mischaracterization of the record; and (3) the court make a finding that the Trust Agreement is not privileged.[9]

## III.  TOPIC 21

The court first addresses the argument by Tallahassee, Riley, Bay, Blair, and National that the deposition should be reopened on the grounds that PCS counsel failed to properly prepare the deponent on Topic 21 relating to "[PCS's] knowledge of transformer purchases in

---

[9] While Tallahassee, Riley, Bay, Blair, and National adopt in their respective motions all of the arguments made by Truland and Georgia Pacific (Tallahassee Mot. ¶ 9; Blair Mem. 1-2), they additionally assert that PCS failed to prepare its witness on Topic 21.

9

Asia by Ward Transformer Company."[10] (4th Am. Not. ¶ 21). During the deposition, PCS objected to questions purporting to relate to Topic 21 because the questions concerned the *sale* of transformers by Ward Transformer Company in Asia, rather than the *purchase* as expressly stated in the notice. (*See* Dep. Tr. 379:17 to 381:12). In its response to the motions to compel, PCS asserts that raising this issue to the court in a motion to compel is inappropriate because it was not first raised to Mr. Ledbetter as required. (*See* 10 July 2014 Order 2 (requiring that "the parties . . . bring any discovery disputes to the Special Master for resolution before filing formal motion with this court"). The court agrees.

Except for the summary assertion by Tallahassee, Riley, and Bay in their motion that "[t]he Special Master held a one-hour conference call on August 19, 2014, which included a discussion of Topics 21 & 22" (Tallahassee Mot., Cert. of Conference ¶ 13),[11] there is no indication in the record that this issue was brought to Mr. Ledbetter's attention at any time, including during the 1 July, 19 August, or 9 September 2014 conference calls.

As described above, the discussion during the 1 July 2014 conference call related generally to PCS counsel's instruction to the deponent not to answer questions allegedly outside the scope of the notice. The only topics that were expressly discussed during the call were Topics 11, 13, and 20. (*See* Ledbetter Tr., *e.g.*, 12:24 to 13:9; 15:16-21; 16:19 to 18:10). After hearing from counsel, Mr. Ledbetter gave his general opinion that instructions not to answer were not appropriate. (*Id*. 22:22 to 23:4; 25:17-25; *see also* Ledbetter 3rd Stat. Rpt. (D.E. 1387) 4 (referencing his suggestion that PCS counsel "note and reserve objections and permit the

---

[10] The court notes that it addresses here only the contention that Mr. Brom had not been properly prepared on Topic 21 as specified in the notice. Whether it was appropriate for PCS counsel to instruct Mr. Brom not to answer questions on this ground is addressed separately below in section V.

[11] The court notes that Blair and National did not assert in their motion that Topic 21 had been addressed by Mr. Ledbetter. (*See* Blair Mot., Cert. of Conference ¶¶ 14-16).

deponent to answer the disputed questions to the extent he could")).  However, Mr. Ledbetter made clear that he was not providing any opinion on whether any of the challenged questions were within the scope of the topics specified in the notice.  (Ledbetter Tr. 21:15-25; 22:7-18; 25:9-16).

Further, Mr. Ledbetter's subsequent status reports to the court contain no indication that this specific issue was raised to him in either the 19 August or 9 September 2014 conference calls.  In his fourth status report, Mr. Ledbetter represents that after hearing from the parties in the 19 August 2014 call, he made no specific recommendation as to whether deponent had been properly prepared on any specific topic, suggesting only that the instructions not to answer questions on any topic other than Topic 22, for which the objections were based on privilege, were "inconsistent with the requirements of the Federal Rules of Civil Procedure."  (4th Stat. Rpt. 2).  The record also reflects that the 9 September 2014 call related only to Topic 22.  (*See* 4th Stat. Rpt. 3-4; *see also* PCS Resp. to Truland Mot., Ex. 9 (D.E. 1534-10) (email exchange between the parties and Mr. Ledbetter prior to the 9 Sept. call)).

Because the court concludes that Tallahassee, Riley, Bay, Blair, and National did not bring the issue of whether PCS counsel failed to properly prepare the deponent on Topic 21 to Mr. Ledbetter for resolution, their motions to compel on this ground are DISMISSED.

**IV.  TOPIC 22**

The court will, for the same reason, dismiss the motions to compel on the basis that PCS counsel instructed the witness not to answer questions regarding Topic 22 on the grounds that the Trust Agreement is protected by privilege.  Mr. Ledbetter has not been provided an opportunity to address this issue on the merits because movants have not agreed to permit him to review the Trust Agreement *in camera* for this purpose.  The privilege objection to Topic 22, which was

raised for the first time in the fourth amended deposition notice, was made promptly by PCS and accompanied by an inquiry to the movants as to whether the parties should discuss the issue with Mr. Ledbetter. At the subsequent 27 June 2014 conference call with Mr. Ledbetter, three days before the deposition, movants declined an offer by Mr. Ledbetter to review the Trust Agreement *in camera* so that he could be prepared to address any issues that might arise during the deposition. It is not clear from the record why the movants did so, and Mr. Ledbetter stated in a follow-up email to the parties only that he was told by Truland's counsel that he did not think such a review "would be necessary." (30 June 2014 email 2).

In the post-deposition discussions, movants asserted that the basis for their objection to the review was that it "may impair or otherwise have an impact on [Mr. Ledbetter's] ability to later mediate settlement discussions." (3 Sept. 2014 email 3). While Mr. Ledbetter had raised this issue for the consideration of the parties, as diligence and his specialized experience arguably warranted, there is nothing in the record to suggest that he personally believes, as movants appear to suggest, that his participation in later mediation discussions would be impaired by his review of the Trust Agreement. Indeed, the record shows the contrary.

For example, Mr. Ledbetter expressed on several occasions his willingness to review the Trust Agreement *in camera* if the parties would all agree to the review. It is fair to assume that he would not have made such an offer if he believed that doing so would impair his ability to later facilitate mediation discussions. More to the point, in seeking an amendment of the court's appointment order to permit him to facilitate confidential bilateral settlement negotiations, Mr. Ledbetter represented to the court his belief that his receipt of confidential information during negotiations "would not compromise [his] ability [to] serve impartially" in assisting with the

12

resolution of discovery disputes or general settlement negotiations. (3d Stat. Rept. 5). The court approved the amendment as proposed by Mr. Ledbetter. (1 Aug. 2014 Order (D.E. 1488) 1-2).

Moreover, movants have failed to explain or even suggest how they might be disadvantaged by Mr. Ledbetter's review of the Trust Agreement, especially given that the terms of the court's order permitting Mr. Ledbetter to facilitate bilateral settlement negotiations requires consent by the parties, which they may withdraw at any time. (*See* 1 Aug. 2014 Order 5 ¶ 1). Also, unlike any of the movants, PCS is a party to the Trust Agreement and is asserting privilege with respect to it, but has no objection to *in camera* review. Indeed, when he raised the issue, Mr. Ledbetter expressed his view that the *in camera* review would be more of a concern for plaintiffs. (*See* 4th Stat. Rpt. 3 ("I noted that one or more parties to the Trust Agreement (*the Plaintiffs*), or *perhaps* a Defendant in a category of parties mentioned therein, might be reluctant to have me review the Trust Agreement and later assist the parties in settlement discussions." (emphasis added); 3-4 (again noting that "this concern was *directed principally to the Plaintiffs*, the parties to the Trust Agreement, though *it might* also involve one or more of the Defendants") (emphasis added))).

Having found that movants failed to demonstrate sufficient grounds for their objection to Mr. Ledbetter's *in camera* review of the Trust Agreement, the court concludes that they did not submit the issue to him for resolution before filing their motions to compel as required. Accordingly, the motions to compel on the grounds that Topic 22 relates to privileged matters are DISMISSED. Further, to the extent that any party should hereafter seek further assistance from Mr. Ledbetter on this issue, such party shall provide him with a copy of the Trust Agreement for *in camera* review for such purpose.

## V. GENERAL OBSTRUCTION OF DEPOSITION

Finally, the court addresses movants' more general contention that the deposition should be reopened due to PCS counsel's obstruction of the deposition by unnecessary objections and commentary, by coaching of the witness with speaking objections, and by instructing the witness not to answer questions on the grounds that they were outside the scope of the deposition notice. Unlike the above-discussed issues, the court finds that this issue has been properly raised to Mr. Ledbetter for resolution. After hearing from the parties in both the 1 July and 19 August 2014 calls, reviewing the parties' written submissions, and reviewing the deposition transcript, he found that "the transcript did not appear to evidence intentional obstruction" by PCS counsel, but that PCS counsel's "instructions not to answer questions concerning topics other than Topic 22 [on the grounds of privilege] were inconsistent with the requirements of the Federal Rules of Civil Procedure." (4th Stat. Rpt. 2). On the basis of these findings, he recommended that the parties stipulate to one additional hour of Rule 30(b)(6) deposition to be held by videoconference at the expense of PCS. Having carefully reviewed the transcript of the deposition, the court concurs in Mr. Ledbetter's findings and recommendation, and they will be adopted.

Accordingly, movants' motions to compel on this ground are GRANTED. PCS shall produce Mr. Brom for one additional hour of deposition by videoconference no later than 9 January 2015. PCS shall bear any reasonable court reporter or videographer expenses incurred by any party for the continuation of the deposition that would not have been incurred had the deposition been completed on 1 July 2014 (*e.g.*, additional appearance fees).

## VI. EXPENSES

The court finds that the circumstances would make an award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5), (b)(2)(C). The court therefore declines to make such an award.

## CONCLUSION

For the reasons and on the terms set out above, the motions to compel (D.E. 1523, 1526, 1528) are GRANTED IN PART and DENIED IN PART.

This, the 15th day of December 2014.

James E. Gates
United States Magistrate Judge